### HILL v. CLAUDE H. WOLFE, Inc., et al.

Industrial Commission.

April 20, 1955.

Lester Harris, Orlando, for claimant.

Walter E. Smith, Orlando, for the employer and insurance carrier.

JAMES T. VOCELLE, Chairman and WALTER L. LIGHTSEY, Commissioner.

This is a claim for additional compensation benefits. On June 1, 1953 claimant sustained an injury in the course of his employment, dislocating his left shoulder. He later developed traumatic synovitis incident thereto. He was furnished medical attention and paid compensation for temporary total disability at the rate of $24.30 per week based on his average weekly wages of $40.50, until September 26, 1953. Thereafter, on February 11, 1954, deputy commissioner Barker ordered the carrier to reinstate compensation payments, and the carrier did so. On April 13, 1954 Mr. Barker

made a further order in which he found that the claimant had not reached maximum recovery and required further medical treatment, that he had 25% temporary partial functional disability of the injured shoulder which prevented him from obtaining even light employment, except for a brief interim period during which he earned $14. Mr. Barker ordered the carrier to continue medical treatment and to resume compensation payments for temporary total disability. Compensation payments under that order were suspended by the carrier on June 29, 1954. The present proceeding relates to Hill's claim for further compensation benefits—with respect to which a hearing was held by deputy commissioner Haines on September 22, 1954 resulting in his order dated November 17, 1954, the subject of this review.

Mr. Haines found—(1) that claimant's temporary total disability continued until September 21, 1954 when he attained his maximum degree of improvement, (2) that claimant was an uneducated negro, 56 years of age, whose employment had always been confined to yard and grove work, and that in the past several months he had been able to obtain or perform very little work because of his shoulder condition, so that the "only wages he had earned were for cutting the grass in two yards, once every two weeks, that he received $1.50 for this service, or $3 every two weeks," (3) that in the opinion of Dr. F. DeWitt Stanford, his principal attending physician, claimant has a 25% permanent disability of his injured shoulder, (4) that under the case of Ball v. Mann (Fla.), 75 So. 2d 758, in cases arising under section 440.15(3)(u), Florida Statutes 1953 (at page 760)—"the word 'disability' as there used refers to diminution of capacity to earn resulting from a physical impairment caused by the injury to the body and not merely to the physical impairment itself," and that the claimant "has a permanent partial disability of the body as a whole amounting to 80%," for which the order required the carrier to pay compensation for 280 weeks commencing September 21, 1954, and (5) that the carrier should pay claimant's counsel a $600 fee.

In brief, the carrier contends—(a) that the evidence does not support the deputy's finding that claimant reached maximum recovery on September 21, 1954, and (b) that the deputy misapprehended the effect of the evidence and applied the same to the body as a whole, whereas only the arm and shoulder were involved and the loss of use testified to by both the claimant and the doctor related only to loss of use of the left arm.

The issues before the commission may be stated as follows—(1) is the deputy's finding that claimant attained his maximum degree

of recovery on September 21, 1954 supported by competent substantial evidence? (2) Did the deputy err in making a finding of permanent partial disability (a) as applied to the body as a whole, rather than the arm alone; (b) based on impairment of earning capacity, rather than functional or medical disability?

We are of the opinion that the deputy's finding that the claimant attained his maximum degree of recovery on September 21, 1954 is supported by competent substantial evidence. Dr. Stanford testified in support of that finding, stating, in part, that after June 30, 1954 (on which date he believed claimant had reached his maximum recovery) claimant returned to his office for further treatment because of the recurrence of certain painful symptoms and that after further treatment he improved until "I think once again he has reached maximum recovery." (T. 130)

We are also of the opinion that the deputy was correct in finding permanent partial disability (a) as applied to the body as a whole, and (b) in basing such finding on impairment of earning capacity rather than upon functional or medical disability. The injury was to the shoulder and while it is true that the function of the shoulder is to enable the hand and arm to perform their respective functions, a shoulder injury can, and here did, result in disability referable to the body. Review of the deputy's award reveals that he considered the variables listed by the Court in Ball v. Mann as proper for consideration in disability cases of the type—namely, the injured employee's (1) *physical condition* (an injured shoulder permitting only 3 or 4 hours work at a time and then necessitating a rest period of several days), (2) *age* (56), (3) *industrial history* (a manual laborer with experience in yard and grove work), (4) *education* (an uneducated negro), and (5) *inability to find the type of work which he could do insofar as affected by the injury* (claimant attempted to find work he could do, but was unable to perform enough work to hold such a job).

The question is also raised that there was no evidence to support the specific finding of 80% disability. It is our opinion that there is such evidence in the record. While wages alone are not a true measure of earning capacity, they are one criterion which can be considered. Before the accident, this claimant's average earnings were $40.50 per week. Subsequent to the injury and after maximum recovery was attained, these average earnings dropped to $1.50 per week. In conclusion, the claimant's testimony to the effect that (1) he had attempted to do some work, (2) he was able to work only 3 or 4 hours at a time and then rest several days, (3) the only work he could do was cut grass and clear up lawns, and

(4) he could not do enough work to hold a job, coupled with a consideration of his age, education, industrial history and earning record, warranted the deduction or finding of such 80% disability.

Affirmed. The carrier is ordered to pay claimant's attorney $300 for services in connection with this review.

JAMES CAMERON, Commissioner (dissenting).

I concur in the majority decision in this case in every respect save one—there is, in my opinion, no competent substantial evidence in the record to support the specific finding of an 80% disability. Comparison of wages earned before and after injury reveals a diminution of earning capacity of 96.3%. There is no testimony with reference to any attempt to secure other types of employment in the community which might be open to this claimant. While it is true that age, education and industrial history in this instance seriously curtail the types of employment open to this man, there is no testimony in this record indicating that these factors have been considered, other than, perhaps, by deduction based upon judicial knowledge. I think the case should be remanded for further consideration in this respect.